UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELE MAYER, *f.k.a.*
MICHELE GREGERSON,

                    Plaintiff,

v.

HOWARD N. WEINER,

                    Defendant.

_____/

Case No. 2:17-cv-12333
District Judge Laurie J. Michelson
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 44)**

## I. RECOMMENDATION

Before the Court is Defendant Howard Weiner's May 4, 2018 motion for summary judgment. (DE 44.) For the reasons set forth below, it is recommended that the Court **GRANT** Defendant's motion.

## II. REPORT

### A. Introduction

This legal malpractice case is before the Court based upon diversity of citizenship. Plaintiff Michele Mayer, *f.k.a.* Michele Gregerson filed this action *in pro per* against her former divorce attorney, Defendant Howard N. Weiner. *See*

*Michele Gregerson v. Steven Glen Gregerson*, Case No. 2005-710435-DO (Oakland County Circuit Court, hereinafter the "State Court").[1]

Interpreted liberally, Plaintiff's "Complaint for Legal Malpractice" appears to allege that, between 2013 and 2015, Defendant was negligent in three ways: by (a) filing, and failing to withdraw, motions and subpoenas in January and February of 2014, (b) withdrawing from her underlying case, and (c) maintaining inadequate billing practices. (DE 1 at 3–9.) She also intimates that Weiner's billing practices were fraudulent. (*Id.,* alleging Defendant "induced" Plaintiff to pay him by making "untrue" representations; "double charg[ed] for drafting of documents;" "falsif[ied] the originality of documents;" and accordingly agreed to "a $5,000 reduction in his invoice.") Significant to the instant motion, she pleads two causes of action—one for legal malpractice and another for breach of fiduciary duty—but the same facts underlie both. (DE 1 at 10 ("Defendant[] breached his fiduciary duties and obligations to Plaintiff by doing all of the acts and omissions as herein alleged.").) Plaintiff alleges that she is entitled to $28,000 (for legal malpractice) and $113,728.48 (for breach of fiduciary duty). (DE 1 at 5 ¶¶ l & p, at 6, at 8 ¶ 18, at 9 ¶ 26 and at 10, ¶ 27.)

---

[1] Unless otherwise noted, support for this section can be found on the Register of Actions (www.oakgov.com, "Court Explorer," Case No. 2005-710435-DO) and/or in the instant lawsuit's record (DE 1, 7, 10, 44, 54, 55).

### B. Instant Motion

Defendant argues that he is entitled to summary judgment because the tactics he employed in pursuing the 2014 motions and subpoenas are not actionable under Michigan's attorney-judgment rule.  Alternatively, even if Plaintiff's claims are actionable, Defendant argues that she cannot make out the basic elements of duty, breach, causation, and damages.  Specifically, Defendant argues that Plaintiff cannot establish the standard of care or breach because she has not identified a standard of care expert.  Likewise, he alleges that she cannot establish damages because she has not paid any of the sanctions of which she complains.

Plaintiff objects in two ways.  First, she attempts to re-characterize her claims.  She argues that Defendant narrowly construed her allegations, addressing her legal malpractice claim but failing to address her breach of fiduciary duty claim.  She alleges a new ground for breach, a breach of confidentiality: Defendant "discussed [P]laintiff's case with an appellant [sic] attorney he has a long-standing relationship with and highly recommended her due to her past success in his cases requiring appeal."  (DE 54 at 13.)  And she attempts to morph her negligence allegations into a fraud claim.  (DE 54 at 16–17 ("In order to make out a prima facie cause of fraud, a plaintiff must prove the following . . . .").)  Second, she addresses her failure to provide an expert witness.  She does so by criticizing the report of Defendant's expert witness and denying the need for a standard of care expert at all.  Instead, she

suggests that expert testimony is unnecessary in a bench trial because judges are qualified to determine the standard of care for legal malpractice.  (DE 54 at 20–24).[2]

In his reply, Defendant asserts that Plaintiff's purported claims for breach of fiduciary duty (and, presumably, breach of confidentiality) and fraud are subsumed by her legal malpractice claim.   He reiterates his position that Plaintiff lacks a standard of care expert to prove breach and lacks substantiation to prove damages. Lastly, he argues that Plaintiff's Exhibit 1 (a copy of the Request for Investigation that she filed with the State Attorney Grievance Commission ("AGC") and attached to her Opposition), is not only irrelevant, but is also a confidential document that should be stricken from the record.  (*See* DE 63, "Opinion and Order Denying the

---

[2] Confusingly, Plaintiff drops numerous footnotes in her response brief (which is styled as an "Objection"), but these do not seem to lead to any actual content as either footers or endnotes.  It appears that these phantom footnotes appear in places where Plaintiff may have simply copied material from Defendant's brief, without including his corresponding footnotes.  Plaintiff also expends six pages of briefing objecting to the exhibits attached to Defendant's motion.  She generally suggests, without specifying, that some of the exhibits may not have been "provide[d] during discovery" and that unidentified "portions of it are inadmissible and should be disregarded."  (DE 54 at 25.)  More specifically, she objects to Defendant's Ex. E (as "inadmissible due to irrelevance and motive to clutter"), Ex. F (as "of no relevance"), Ex. J (as "altered…by manipulating Exhibit J to include two Emails between Mayer and Weiner"), Ex. K (a copy of the complaint and summons, which Plaintiff apparently believes should not have been buried in a footnote), and Ex. L (Mayer's own deposition transcript, again on the basis of it being referenced in a mere footnote). These objections are difficult to decipher, and the Court sees nothing ostensibly wrong with the exhibits in question, particularly since they are primarily being used to supply context.   Finally, Plaintiff's table of contents bears little correlation to the actual substantive flow of the brief.

Request to Strike or Seal Contained in Reply to Response to Motion filed by Howard N. Weiner.")

### C. Background

Conceptually, Defendant represented Plaintiff in three stages.  In stage one, Defendant handled Plaintiff's divorce from Steven Glen Gregerson (hereinafter "Gregerson"), which was filed in August 2005 and concluded in October 2006 by entry of a consent judgment of divorce (hereinafter the "Consent Judgment").  The Consent Judgment provides:

> IT IS FURTHER ORDERED AND ADJUDGED that commencing August 1, 2006, and continuing until Plaintiff wife's death, remarriage, or further Order of the Court, Defendant husband shall pay to Plaintiff wife as modifiable spousal support for her support and maintenance the aggregate of the following components ([S]ubparagraphs A through D):

> A. One-third (1/3) of Mr. Gregerson's base salary which is currently $158,000.00 . . . .

> B. One-third (1/3) of the negotiated value of the employer provided living expenses currently valued at $32,000.00 a year . . . .

> C. One-third (1/3) of the gross amount of any and all bonuses (usually received in March) to be paid to Plaintiff wife within 14 days of receipt by Defendant husband . . . .

> D. One-third (1/3) of the foreign post differential and international assignment premium which amounts are currently $10,000.00 and $30,000.00 respectively . . . [to] be paid [to Plaintiff wife] within 14 days of receipt by Defendant [husband] . . . .

DE 44-2 at 2–4.

In stage two, which lasted into 2008, Defendant handled post-judgment matters relating to the modifiable nature of Plaintiff's spousal support. Arguably, the Consent Judgment provided for modifiable spousal support as well as automatic adjustments of spousal support commensurate with fluctuations in Gregerson's compensation. Plaintiff argued Subparagraphs A and B of the Consent Judgment awarded her one-third of Gregerson's base salary and employer-valued living expenses, but were based on *current* values. (DE 44 at 2–4.) Subparagraphs C and D awarded Plaintiff one-third of Gregerson's bonuses and foreign monies within 14 days of his receipt. (*Id.*) Ultimately, the State Court determined that Subparagraphs A and B were "static" and that Subparagraphs C and D fluctuated "automatically." (*Id.*) There was no further case activity for over five years (April 25, 2008–January 16, 2014).[3]

The instant action challenges the next and final stage of Defendant's representation, stage three. In stage three, Defendant handled additional post-judgment matters that he admits revisited the modifiable nature of Plaintiff's spousal support. The representation began in 2013, approximately around the time Plaintiff

---

[3] Defendant says he provided Plaintiff a copy of the opinion and expressed his own opinion that the State Court's interpretation of the Consent Judgment was flawed, particularly with respect to the "static" nature of Subparagraphs A and B. He further alleges that he advised Plaintiff of her appellate options. He further alleges that she filed a handwritten motion for reconsideration, which was denied, but that she did not try to appeal the decision beyond this.

received correspondence from Gregerson's attorney, advising that his client was preparing to retire and hoping to terminate spousal support obligations.  (*See* DEs 44 at 4, 44-10 ("This note is to assure that you received my phone message from Friday, April 19, 2013 requesting you to communicate with Mr. Howard Weiner, my legal counsel regarding Steve's desire to terminate spousal support."); 54 at 8.) Who pursued the attorney-client relationship first is disputed.[4]  Nevertheless, Defendant represented Plaintiff at all times relevant to the instant motion, and the representation unequivocally concluded on September 9, 2015, when the State Court allowed Defendant to withdraw.

### 1.  Defendant's Pursuit of the 2014 Motions and Subpoenas

In late 2015, Plaintiff was sanctioned by the State Court that presided over her divorce.  Plaintiff blames Defendant for this, pointing to motions and a subpoena that were pursued in early 2014.

A deeper look at the underlying procedural history is relevant here.  In January 2014, nine months after learning of Gregerson's intent to retire, Defendant filed a Motion to Enforce the Consent Judgment on Plaintiff's behalf, alleging that

---

[4] Plaintiff argues that Defendant was the *first* to pursue their attorney-client relationship in 2013; she merely acquiesced.  (DE 54 at 29–30.)  Defendant says this contradicts Plaintiff's own deposition testimony.  (DE 44 at 4–5 n.12, Ex. L).  In the scheme of things, this particular fact is inconsequential, either way.

Gregerson was avoiding his spousal support obligations by deferring his compensation and/or taking it in the form of stock options.  (DE 44-17.)

To support her allegations, Plaintiff sought a Subpoena against Gregerson's employer, concerning Gregerson's salary, bonuses, and stock options. (DE 44-18.) The Subpoena issued on January 17, days *before* the above enforcement Motion was accepted for filing.  Defendant states that the enforcement Motion was "dated" January 14, albeit not "accepted for filing" until January 22.  (DE 44 at 5, nn.16–17.)  Thus, the Subpoena did issue before the Motion was accepted for filing, but Defendant appears to allege this was in part due to circumstances beyond his control. In any case, the State Court ultimately denied Gregerson's motion to quash it, after initially quashing it without prejudice.  (DEs 44-29 at 7, 44-21 at 2.)

 Indeed, the State Court expressly allowed Plaintiff to justify additional post-judgment discovery in another amended motion, since discovery had closed in 2008. (DE 44-21 at 2 ("Plaintiff may file an amended motion to modify support setting forth additional changes in circumstances that support such modification to be heard on Feb. 26, 2014.").)

Accordingly, Defendant filed a Second Amended Motion to enforce the Consent Judgment or, alternatively, to Modify Spousal Support on Plaintiff's behalf, setting forth the requested changes in circumstances that purportedly justified modifying support.  For example, it noted that Plaintiff was faced with increased

living expenses, a decline in her health, and had never made the $20,000 imputed to her in the Consent Judgment. (The Original, First, and Second Amended Motions are hereinafter referred to as the "2014 Motions").[5]  Defendant likewise filed a new Subpoena. (The original and amended Subpoenas are hereinafter referred to as the "2014 Subpoenas").

Gregerson filed a Motion for Sanctions, criticizing the 2014 Motions and Subpoenas based on MCR 2.114(D), which was the certification by attorney or client (based upon signature) provision.  In turn, the State Court permitted some post-judgment discovery to move forward, and limited the remaining issues to possible deferral of income, stock options, and sanctions.[6]

Ultimately, the State Court denied Plaintiff's 2014 Motions (to enforce the Consent Judgment or to modify spousal support),[7] and granted her former husband's

---

[5] Although the Second Amended Motion rendered its two previous iterations moot, the motions (and subpoenas) are referenced in plural, rather than singular, form for analytical clarity.  This is because Plaintiff seems to challenge the fact that Defendant continued to pursue and failed to withdraw each filing.

[6] The issues were narrowed on February 26, 2014; hearings on the remaining issues were held on July 10, 2014, and August 6, 2014.

[7] On May 12, 2014, following the February 26 hearing, Plaintiff's Motion for Modification was denied because Plaintiff failed to plead sufficient change in circumstances since entry of Judgment.  Plaintiff's Motion for Enforcement seeking one-third of any increases in Gregerson's base salary and car allowances was denied.

Motion for Sanctions, criticizing the 2014 Motions and Subpoenas.[8]  The issue of the amount of sanctions was set for a separate evidentiary hearing on October 29, 2015 (hereinafter the "Sanction Hearing").

### 2.  Defendant's Withdrawal from the Underlying State Case

Before the amount of sanctions could be set, Defendant was granted leave to withdraw as Plaintiff's attorney.  His motion was filed on August 26, 2015, and granted on September 9, 2015. (DEs 44 at 9–10, 44-31, 44-33.)  The State court did not provide an explanation, beyond noting that it was "fully advised in the premises." (DE 44-33.)

Afterwards, Plaintiff represented herself at the October 29, 2015 Sanction Hearing.  She presented no testimony, witnesses, evidence, or closing argument. (DE 44-34.)   On December 22, 2015, she was ordered to pay $42,864.24 in attorney's fees and costs.  (DE 44-35 at 12.)  She appealed the Sanction, arguing— contrary to her position now—that the 2014 Motions and Subpoenas were supported

---

[8] On October 14, 2014, Gregerson's Motion for Sanctions was granted.  With respect to the 2014 Motions, he argued that Plaintiff raised the issue of Subparagraphs A and B being based on current values back in 2008.  He also alleged that Plaintiff knew he had not been on a foreign assignment since 2008; otherwise she would have automatically been entitled to one-third of his foreign income under Subparagraph D.   With respect to the 2014 Subpoenas, Gregerson argued that Plaintiff's unwillingness to resolve the matter informally required him to file the post-judgment Motion to Quash and incur attorney's fees.

by law and facts and so sanctions were inappropriate.  (DE 44 at 10; *see Gregerson v. Gregerson*, Appeals Docket No. 331079.)

On February 11, 2016, Gregerson filed a motion to compel payment of the court-ordered sanctions and to terminate spousal support.  On February 24, 2016, it seems that attorney Trish Haas filed an appearance on behalf of Plaintiff.  Plaintiff challenged the reasonableness of her new attorney's fees, as she does here with respect to Weiner's fees, but the State Court found Ms. Haas's fees to be reasonable. (DE 44-13, Dep. Trans. at 26–29.)  Eventually, on September 9, 2016, the motion to terminate spousal support was settled on the record, and, on October 12, 2016, an order changing spousal support was entered.  By stipulation with her former husband, the parties agreed that Plaintiff would receive an additional $192,552 in alimony payments.  Conversely, she would pay $6,976.00, a fraction of the court-ordered sanction, and well below the jurisdictional amount necessary for diversity jurisdiction in this Court.  (DE 44-38, "Stipulated Order Re: Spousal Support and Other Matters.")

Thereafter, on May 19, 2017, Plaintiff Mayer filed a "motion for malpractice" against Attorney Weiner.  The motion was denied on June 14, 2017.  Three days later, she filed the instant "Complaint for Legal Malpractice" against Defendant, containing two causes of action for legal malpractice and fiduciary breach.

In her Complaint, Plaintiff suggests that Defendant withdrew from the representation for financial reasons, among other things. She cites one of his emails from August 18, 2015, in which he wrote, "If you don't like my hourly rate ($350) or minimum charge of ¼, then get another attorney. This is one of the reasons I am withdrawing as your attorney." (DE 1 at 3.) She characterizes his withdrawal as an abandonment. (DE 1 at 5.)

### 3. Defendant's Discussion with Appellate Counsel

In her objection to the instant motion—and for the first time—Plaintiff alleges that Defendant breached the duty of confidentiality. As noted above, she alleges that he did so by "discuss[ing] [Plaintiff's] case with an appellant [sic] attorney he has a long-standing relationship with and highly recommend[ing] her due to her past success in his cases requiring appeal." (DE 54 at 13.) Defendant has indicated that he discussed Plaintiff's appellate options with his client. (DE 44 at 4, 9.) But again, he does not respond to this allegation directly.

### D. LEGAL STANDARD

### 1. Motions for Summary Judgment

Federal procedural law applies. Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that might affect the

outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted).  However, the Court views "all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 Fed. App'x. 132, 135 (6th Cir. 2004) (internal citations omitted) (emphasis added).

"Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*; Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for the purposes of the motion.").

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative.  *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words,

summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case . . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### 2. Legal Malpractice Claims

#### a. Elements of Breach and Damages

Michigan substantive law applies.  In Michigan, "the elements of a legal malpractice action are: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Bowden v. Gannaway*, 871 N.W.2d 893, 895 (Mich. Ct. App. 2015).  Our focus is on the second and fourth elements.

Negligence, the second element, is a breach in the standard of care.[9]  The standard of care was established long ago in *Eggleston v. Boardman*: "Whenever an attorney or solicitor is retained in a cause, it becomes his implied duty to use and exercise reasonable skill, care, discretion, and judgment in the conduct and management thereof."  37 Mich. 14, 16 (Mich. June 12, 1877).

---

[9] Negligence is sometimes used interchangeably to refer to an entire cause of action, as in "professional negligence," and also to just the breach of the standard of care; I use it here in the latter sense.

In a legal malpractice case, jurors are not asked to imagine what a hypothetical "reasonable man" would do; instead, they are informed about what actual attorneys of ordinarily skill and capacity "commonly" do in the practice of law in the jurisdiction. Ronald E. Mallen, 2 LEGAL MALPRACTICE § 20:2 (2018 ed.); *see also* § 20:3 ("Ordinary competence is that usually exercised by attorneys . . . . [But t]he ultimate test of competence is *reasonable conduct*, which is determined by the standard of care that requires the exercise of skill and knowledge *ordinarily* possessed by attorneys under similar circumstances." (internal citations omitted)).

Although the degree of localization is not settled, judges can instruct jurors that the standard of care is that of legal practitioners in the same or a similar community, or of legal practitioners nationwide. *See* INSTITUTE OF CONTINUING LEGAL EDUCATION, TORTS: MICHIGAN LAW & PRACTICE § 7.20 (Vol. 1, Oct. 2016). In any event, to discern this standard, expert testimony is generally required. *Id.*

In most cases, expert testimony is required to establish negligence by opining on the legal standard of care owed to a particular client and any breach of that standard. *See, e.g.*, *Beattie v. Firnschild*, 394 N.W.2d 107, 110 (Mich. Ct. App. 1986) (requiring expert testimony to establish that attorney violated Michigan Code of Professional Responsibility DR 5-105, which prohibited lawyers from representing multiple clients with conflicting interests); Mallen, 2 LEGAL MALPRACTICE § 37:130 ("The standard of care, concerning what a lawyer should

have done, can include the more fundamental issue of whether the lawyer had a duty to do so.").  Expert testimony may not be required in cases where the standard of care is clear.  *See, e.g.*, *Joos v. Auto-Owners Ins. Co.*,  288 N.W.2d 443, 444–445 (Mich. Ct. App. 1979) (discussing *in dicta* a missed time limit and a failure to disclose good-faith settlement offers).

The final element of a legal malpractice claim—the fact and extent of the injury alleged—is commonly referred to as "damages."  A plaintiff is not considered to be injured unless she has suffered a loss for which she may seek monetary damages.  7A C.J.S. § 366 (2018).

### b.  Attorney-Judgment Rule Defense

Another barrier to establishing negligence is the attorney-judgment rule, first adopted by the Michigan Supreme Court in *Simko v. Blake*, 532 N.W.2d 842, 846 (Mich. 1995), barring legal malpractice claims based on mere errors of professional judgment, as opposed to breaches of reasonable care.  In *Simko*, the court reasoned that "an attorney is not expected to be a guarantor of the most favorable possible outcome." *Id.*  Otherwise, "every losing litigant would be able to sue [their] attorney if [they] could find another attorney who was willing to second guess the decisions of the first attorney *with the advantage of hindsight.*" 532 N.W.2d at 847 (emphasis added).

To establish the attorney-judgment rule, there must be a finding that the alleged conduct was in fact a "tactical decision." If it was, a mere error in judgment is insufficient by itself to constitute attorney malpractice as a matter of law. *Taylor v. Monroe County Senior Legal Servs.*, 2010 WL 4774272, *2 (Mich. Ct. App. Nov. 23, 2010). But this defense is subject to a good faith requirement: an attorney is only shielded from liability for a mere error in judgment if he acts in good faith. *Id.*; *Simko*, 532 N.W.2d at 847. For example, a decision such as whether to pursue a claim at trial, done with full knowledge of the law and in good faith, is a tactical decision that the court may not question; hence, it is outside the realm of negligence. *Id.* at *2.

### 3. Breach of Fiduciary Duty Claims

An attorney's duties to a client are two-fold: (A) competent representation, as discussed above, and (B) compliance with the fiduciary obligations. Mallen, 2 LEGAL MALPRACTICE § 15:1. The latter sets a standard of "conduct" analogous to the standard of "care." *Id.*

Attorneys owe their clients two basic fiduciary obligations: undivided loyalty and confidentiality. These obligations are "the foundation of the attorney-client relationship." *Id.* But although "the attorney-client relationship imposes fiduciary obligations, negligent conduct alone usually does not implicate a breach of those obligations." *Id.* at § 15:3. Thus, it is important to discern whether the negligent

representation and breach of fiduciary duty claims are factually distinct, because redundant claims "should be dismissed." *Id.*

### 4. Fraud and Misrepresentation Claims

In a different category altogether are claims alleging fraud, which is an *intentional* tort. Under the liberal pleading standard of Rule 8, a pleader is only required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also* Fed. R. Civ. P. 8(d)(1) ("Each allegation must be simple, concise, and direct"). When a complaint alleges fraud, however, the plaintiff must meet the heightened pleading standard for fraud required by Rule 9(b). *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Pleading fraud with particularity under Rule 9(b) requires a plaintiff to allege: (i) the time, place, and content of the alleged misrepresentation; (ii) the fraudulent scheme; (iii) the defendant's fraudulent intent; and (iv) the resulting injury. *See Chesbrough*, 655 F.3d at 467.

### E. DISCUSSION

#### 1. Legal Malpractice

It is important to identify the particular conduct that Plaintiff alleges was negligent, in order to analyze each potential incidence of negligence with precision.

Based upon her Complaint, as elucidated by her Response Brief, Plaintiff seems to allege that Defendant was negligent by: (a) filing, and failing to withdraw, baseless motions and subpoenas in January and February of 2014; (b) withdrawing from her case; (c) discussing her case with an appellate attorney; and, (d) maintaining inadequate billing practices. (DE 1 at 6–9, 55 at 12–13.)

### a.  Defendant's Pursuit of the 2014 Motions and Subpoenas

In a legal malpractice action, a duty exists as a matter of law if there is an attorney-client relationship.  *Simko*, 532 N.W.2d at 846.  An "attorney-client relationship" indisputably existed when Defendant pursued the 2014 Motions and Subpoenas on behalf of Plaintiff.

The more complicated question is whether Defendant committed "negligence" in the pursuit of the 2014 Motions and Subpoenas.  Defendant argues that his conduct is outside the realm of negligence altogether because it is subject to the attorney-judgment rule.  Alternatively, he argues that negligence cannot be proven because Plaintiff has not furnished a standard of care expert.  Neither party addresses causation, the third element of a legal malpractice claim.  Defendant does, however, argue that Plaintiff has not suffered any damages.  Plaintiff, in turn, deems this an argument "not worthy of the plaintiff's defense."  (DE 54.)

### i.  *Attorney-Judgment Rule Defense*

The Court must first determine whether the judgment employed by Defendant in filing the 2014 Motions and issuing the 2014 Subpoenas was simply a "tactical decision." *Simko*, 532 N.W.2d at 848 (recognizing a decision whether to call a particular witness as a tactical decision). If so, the decision will be protected by Michigan's attorney-judgment rule if it was made in "good faith and in honest belief that [Defendant's] acts and omissions [we]re well-founded in law and [] in the best interest of [Plaintiff]." *Simko*, 532 N.W.2d at 846.

First, Defendant's decision to pursue the 2014 Motions and Subpoenas was a "tactical decision." The Michigan Court of Appeals has held that an attorney's decisions "concerning which facts to highlight and which legal issues to raise were tactical decisions and [did] not show a violation of the duty to perform as a reasonably competent appellate lawyer." *Taylor v. Monroe County Senior Legal Servs.*, 2010 WL 4774272, * 2 (Mich. Ct. App. Nov. 23, 2010) (citing *Simko*, 532 N.W.2d at 848). Likewise, here, Defendant's decisions to file a post-judgment motion based upon his client's belief that her former husband was hiding or recharacterizing salary or assets, or to highlight particular facts and law in his motions, and to obtain evidence with a subpoena, were tactical decisions. (*See, e.g.*, DE 44-19, in which Mayer stated that she was also "collecting evidence to substantiate [her] notes.") *See also Woodruff v. Tomlin*, 616 F.2d 924 (6th Cir. 1980) (recognizing making concessions in a brief and cross-examining witnesses as

tactical decisions).  Notably, Plaintiff was permitted to take a limited deposition of Gregerson's employer (DE 44-27 at 3), and while the State Court initially granted Gregerson's motion to quash Weiner's subpoena *without prejudice*, it ultimately permitted the subpoena.  (DEs 44-21, 44-29 at 7.)

Second, Defendant's decisions to pursue the 2014 Motions and Subpoenas had the requisite good faith bases.  In order to attain Plaintiff's desired relief (to enforce the Consent Judgment or, alternatively, to modify spousal support), he had to know the law and facts.  Defendant knew that the law required him to establish new facts or changed circumstances arising since the prior order was entered.  (DE 44 at 15.)  And Defendant provided such facts: he detailed Gregerson's unilateral reductions of income and refusal to proffer information about his income and other forms of compensation, as well as Plaintiff's change of circumstances, including: her increased living costs, payment of health insurance premiums, decline in her health, and lack of job skills to earn the income that had been imputed to her in the Consent Judgment.  (*Id.*)  Defendant endeavored to support these claims through post-judgment discovery, including Subpoenas, which the State Court eventually permitted. Defendant provided the State Court with alternative grounds for relief; he did not merely re-litigate the modifiable nature of Plaintiff's spousal support (specifically, the meaning of Subparagraphs A–D), as Plaintiff suggests.  (DE 44-21.)  Furthermore, it was within the State Court's

discretion to revisit this argument, since there is an ongoing statutory right to modify spousal support.  M.C.L. 552.28.   A "lawyer is not liable for an error in advice or action concerning an uncertain, unsettled, or debatable proposition." Mallen, 2 LEGAL MALPRACTICE § 19:27 (2018 ed.).  In fact, "any position that is favorable to the client and neither unlawful nor frivolous may be urged."  *Id.* (referencing ABA MODEL CODE OF PROFESSIONAL RESPONSIBILITY, Rule 3.1); *see also* MRPC § 3.1 cmt. ("What is required of lawyers is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good-faith arguments in support of their clients' positions.  Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail.").

Moreover, Plaintiff's allegation that Defendant should have *withdrawn* the 2014 Motions and Subpoenas is a classic example of the hindsight bias cautioned against by *Simko*.  Without the benefits of hindsight, Plaintiff *encouraged* Defendant to pursue the 2014 Motions and Subpoenas—despite Defendant's warnings.

For example, before responding to Gregerson's Motions for Sanctions, Defendant cautioned Plaintiff:

> As we discussed before, [Gregerson's] attorney thinks your Motion is frivolous and is asking for fees and sanctions.  Attached is the Motion filed by his attorney for your review.  While I do not agree with her, there is no telling what Judge Young will do.  Do you still want me to proceed with the hearing on February 26th?

(DE 44-25 ("February 21, 2014 Email correspondence between [Plaintiff] Mayer

and [Defendant] Weiner").)

> Nevertheless, Plaintiff responded:
>
> Howard [Weiner], I am very impressed with your revised motion and
> believe you have developed a wonderful argument.  Well done … [sic]
> Yes, I would like to move forward and thank you!  Michele [Mayer].

*Id.*

Similarly, before the Motion for Sanctions was decided, Defendant again

cautioned Plaintiff:

> As you are aware, we are litigating these issues in front of a Judge who
> has not been favorable or sympathetic to your position and has indicated
> that she is very likely to award [Gregerson] some attorney fees and
> costs . . . .  It is my understanding that you are going to think about your
> options over the weekend and get back to me."

(DE 44-28 at 3, February–August 2014 Email Correspondence between [Defendant]

and [Plaintiff], dated February 28, 2014.]

Plaintiff did not respond to this portion of Defendant's email directly.

However, in response, she said:

> I have researched the best options in which [sic] I may take moving
> forward.  It appears that appealing is not the best idea . . . .  A "Motion
> for Reconsideration" with an "Affidavit" including the significant
> information recently "Discovered" is the direction to take this Motion.

(*Id.*, dated March 6, 2014.)

Ultimately, Defendant is responsible for exercising good-faith judgment, not for guaranteeing court rulings. This is in part because "[t]here is *no* motion that can be filed, no amount of research in preparation, no level of skill, nor degree of perfection that could anticipate every error or completely shield a client from the occasional aberrant ruling of a fallible judge." *Simko*, 532 N.W.2d at 847 (emphasis added); *see* Mallen, 2 LEGAL MALPRACTICE § 19:27. Indeed, "no amount of work can guarantee a favorable result, [and] attorneys would never know when the work they did is sufficiently more than adequate to be enough to protect not only their clients from error, but themselves from liability." *Id.* Michigan's attorney-judgment rule seeks to prevent precisely this type of "insoluble burden." *Id.*

In the underlying matter, Defendant specifically warned his client that the outcome was uncertain and could result in sanctions. He could not guarantee the outcome, and made that clear. He further warned her that the judge appeared unlikely to rule in her favor and might well award sanctions and costs against her. He gave her the opportunity to reverse course. Nevertheless, Plaintiff was willing to "damn the torpedoes" and go full speed ahead. If it was an error in judgment, it was so for both of them, and only in retrospect. It ought not form the basis for liability here. Had the State Court judge decided the matter differently, and in Plaintiff's favor, Defendant would undoubtedly have had a much happier former client. But outcomes do not provide the basis for legal malpractice actions, nor do

errors in judgment; instead, a breach in the standard of professional care must have occurred and be proven.[10]

### ii. Standard of Care Expert

Defendant proffers the opinion, contained in the report of his expert witness, Attorney Gilbert Gungi, that Defendant's representation of Plaintiff was consistent with the standard of care applicable to family law attorneys and that the filing and arguing of the subject motions was done in good faith and based on representations provided by the client.  (DE 44-43 at ¶ 3(a).)  His report further states that:

> The language of the Judgment of Divorce was very clear that Ms. Mayer was entitled to one third of her former husband's income and in my opinion the filing of a motion requesting enforcement of the provision was appropriate and well within the standard of practice for family law attorneys in the State of Michigan.  A lawyer of reasonable diligence would, in his judgment, think that Ms. Mayer was entitled to know whether her former husband had received benefits that he had not disclosed, and would not think that filing the motion and seeking discovery would be sanctionable.

(*Id.*, ¶ 2.)

Although Defendant has not provided an *affidavit or declaration* from his expert, he does not have the burden of proof in this case.  Plaintiff does, and she did not *name* any expert witnesses.   Instead, Plaintiff challenges the weight of

---

[10] As the Undersigned frequently explains to litigants in settlement conferences, litigation is fraught with uncertain outcomes.   Crucial decisions (other than compromise or settlement) are ultimately out of the parties' control, being repeatedly rendered by others, including the trial judge, jury, and appellate courts.

Defendant's expert witness, which is inappropriate at the summary judgment stage. She also suggests that, because "Judges hold law degrees and practice law before assuming the bench," a standard of care expert is not required in a bench trial.

Standard of care experts are generally required in a legal malpractice action. There may be rare exceptions for obvious derogations of duty. *See, e.g.*, *Joos*, 288 N.W.2d at 444–445 (discussing in *dicta* a missed deadline and a failure to disclose good-faith settlement offers). But this is only "[w]here the absence of professional care is so manifest that within the common knowledge and experience of an ordinary layman it can be said that the defendant was careless." *Law Offices of Lawrence J. Stockler, PC v. Rose*, 436 N.W.2d 70, 87.

"Even seemingly simple cases [] can require expert testimony." *Stewart v. Hess*, 1997 WL 33344590, at *2 (Mich. Ct. App. July 15, 1997). *See, e.g.*, *Beattie*, 394 N.W.2d at 110 (holding that expert testimony was required to establish that defendant attorney breached a duty of care by representing clients with conflicting interests); *Jacobson v. Lloyd*, 2011 WL 1376312 (Mich. Ct. App. April 12, 2011) (holding that expert testimony was required to support plaintiff's claim that defendant attorney negligently responded to a dispositive motion). Here, Plaintiff has not established that her case is an exceedingly simple one warranting an exception to the general need for a standard of care expert. In fact, her case involves

the very specialized field of Family Law, a practice area which is not within the bailiwick of most Michigan practitioners, let alone laymen or even federal judges.

Furthermore, Plaintiff's suggestion that no expert is needed because both of the judges assigned to this case hold law degrees is not well taken. Plaintiff cites my denial of her motion to file a late jury demand—which noted that legal malpractice issues are "more suitable" to adjudication through a bench trial than a jury trial. (DE 38 at 5–6; DE 54 at 22–23.) But she takes it out of context; as I discussed, "suitability" is one of five discretionary factors courts consider when deciding whether to grant the late filing of a jury demand. (*Id.*) She provides no legal support (and neither could the Undersigned locate any) for the proposition that experts are not needed in bench trials, nor for the notion that the standard of care could simply be established through judicial notice.[11]

Additionally, there does not seem to be a blanket rule excepting the need for standard of care experts in bench trials. *See* 58 A.L.R.6th 1, n.19 (2010); *Fishow v. Simpson*, 462 A.2d 540 (Md. Ct. App. 1983) (rejecting former client's argument that expert testimony should not have been required since the judge, hearing the matter in a bench trial, could have taken judicial notice of the standard of care required of attorneys). Without creating such a rule, I find that no such exception is

---

[11] In any case, and for what it's worth, the biographical data on the Court's website for Judges Michelson and Patti indicates that neither was a family law practitioner.

justified in this case because knowledge of the standard of care in Michigan family law, post-judgment motion practice, and the standards employed by legal practitioners in the same or a similar community must be proven.

### iii. Damages

Plaintiff alleges that she is entitled to $28,000 (for legal malpractice) and $113,728.48 (for breach of fiduciary duty).  (DE 1 at 5 ¶¶ l & p, at 6, at 8 ¶ 18, at 9 ¶ 26 and at 10, ¶ 27.)   Plaintiff pleads two potential sources of damages: the attorney's fees she promised to pay her ex-lawyer, and the sanction award she was ordered to pay her ex-husband.  Neither party fully addresses both sources.  Plaintiff pleads that she was overcharged by Defendant to the tune of $7,000; however, they "[u]ltimately agreed to a $5,000 reduction in his invoice[,]" which reads like an accord and satisfaction (or at least an accord) on its face.  *See* Fed. R. Civ. P. 8(c)(1). Subsequently ignoring this issue, Defendant argues that Plaintiff has not paid any sanctions (not even the lesser, stipulated amount of $6,976) and has therefore not suffered any damages. In her response, Plaintiff acknowledges Defendant's argument.  (DE 54 at 18.)   But she merely says the Defendant's "allegations are not worthy of the [P]laintiff's defense.  There has been nothing more than speculation in the [D]efendant's argument."  (*Id*.)

Although Defendant, the moving party, has the initial burden of proving that no genuine issue of material fact exists, "[o]nce the moving party satisfies its burden,

'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC.*, 256 F.3d at 453 (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).  Plaintiff, the nonmoving party, must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558; *see also Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 Fed. App'x. 435, 441 (6th Cir. 2011).  Moreover, if a party "fails to properly address another party's assertion of fact as required by Rule 56(c), then the court may consider the *fact* undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2) (emphasis added).  Here, Plaintiff has disregarded her burden of setting forth specific facts showing a triable issue on damages.  And by failing to address Defendant's assertion of fact regarding her failure to pay any sanctions, his assertion could be considered undisputed, particularly since the public record, of which this Court takes judicial notice under Fed. R. Civ. P. 201, indicates that the money awarded for sanctions was held in escrow by Gregersen's attorney and then almost all of it was ultimately returned to Plaintiff by stipulated order. (See DE 44-38, ¶ 7.) [12]

---

[12] Both debts can probably be characterized as "accounts stated."  The Michigan Supreme Court has articulated an account stated to be "a balance struck between the parties on a settlement . . . ."  *Keywell & Rosenfeld v. Bithell*, 657 N.W.2d 759, 777 (Mich. Ct. App. 2002) (citing *Watkins v. Ford*, 657 N.W. 300 (Mich. 1889)).  Where a party "is able to show that the mutual dealings which have occurred between two parties have bene adjusted, settled, and a balance struck, the law implies a promise to pay that balance."  *Id.*  The debt on the sanction award appears to have been satisfied, but it is unclear whether the $2,000 owed to Defendant per the fee reduction ever got paid.  Plaintiff suggests that she could still be sued for larger

In a malpractice case, the plaintiff is not considered to be injured as a matter of law unless she has suffered a loss for which she may seek monetary damages. 7A C.J.S. § 366 (2018). Mayer stipulated to pay her ex-husband $6,976.00, a small portion of the court-ordered sanction, with the remainder of it ($35,888.24) returned to her from escrow. (*Compare* DEs 44-35 at 12 *with* 44-38, ¶ 7.) She admits in her deposition that this money was, in fact, returned to her. (DE 44-13, Dep. Trans. at 41.) Likewise, she pleads that "Defendant had excess charges over $7,000 [but they] [u]ltimately agreed to a $5,000 reduction in his invoice[,]" bringing the disputed amount down to approximately $2,000. (DE 1 at 5.) Thus, her hard damages – to the extent that she identifies or explains any in her Complaint, the subject essentially not being addressed in her brief – appear to be approximately $9,000 (sanctions paid plus attorney fee), notwithstanding her internally inconsistent demands for $28,000 (for legal malpractice) and $113,728.48 (for breach of fiduciary duty, based upon the combined amount of sanctions ordered and her own attorney fees).

---

amounts owed to Defendant; however, this is not only inconsistent with her pleadings, but Weiner might well be judicially estopped from making such a claim after successfully arguing here that Plaintiff has no damages. And, if Plaintiff is suggesting that this Court should simply cancel out whatever fees may still be owed to Defendant, no basis for doing so has been provided. Neither party has attached an agreement or any invoices relating to the attorney fees, so the Court is in no position to evaluate the factual efficacy of any such claim that Weiner might pursue.

Plaintiff also provides two other internally inconsistent amounts.  In her response to Weiner's motion for leave to withdraw as counsel in the underlying matter, she wrote that she paid Defendant "more than $30,000 as the result of the petitioner bills/invoices presented to the plaintiff" and "over $35,000 for the legal representation to seek enforcement of her Judgment of Divorce."  (DE 44-32 at 5.) In light of this document, the $113,000 number likely represents not only the sanctions ordered (albeit later significantly reduced by stipulation), but all attorney fees she believes were paid to Weiner going back to the *first and second phases* of his representation in the 2005 to 2008 timeframe, from when she filed for divorce through the initial round of post-judgment motions.  This is apparent because if the $42,864.24 in awarded sanctions are deducted from the $113,728.48 figure, it yields a difference of $70,864.24, approximately double of the highest figure she alleges to have paid in connection with the third phase of Weiner's representation, which forms the basis of the present malpractice action. $70,864.24 is also the same figure one gets when adding the amount Plaintiff claims to have paid in attorney fees and the amount she alleges were awarded in sanctions. (DE 1 at 9 ¶ 26.)[13]

---

[13] Or perhaps, the $70,864.24 differential between what she claims to have paid in attorney fees and had awarded against her in sanctions and the amount she claims in damages represents the amount she still *owes* on Weiner's outstanding invoices, notwithstanding the fee reduction referenced above. On the other hand, her deposition testimony suggests that she also believes herself entitled to reimbursement of fees paid to Ms. Haas in defending a subsequent, separate action to terminate spousal support filed by Gregerson; so maybe this is all part of it. (DE

If Mayer is claiming reimbursement of all attorney fees from all three phases of Weiner's representation, this is problematic for at least two reasons: first, because claims relating to the earlier two periods of service would fall far outside of either the two-year limitations period which applies to Michigan legal malpractice claims (M.C.L. § 600.5805(4); M.S.A. § 27A.5805(4)), or the six-year limitations period for breach of contract (MCL 600.5807); and, second, because this would appear to be an untenable claim for return of *all fees* based upon dissatisfaction with the ultimate, post-judgment outcome, approximately seven years after the divorce, even though fees were not contingent upon the outcome.

Plaintiff provides no support for the idea that she is entitled to a return of hourly attorney fees paid, simply because she is dissatisfied with the outcome of the underlying litigation, let alone its ultimate outcome, many years post-judgment. While this idea might underly contingency fee arrangements, a lawyer "shall not" enter into such an arrangement in "a domestic relations matter."  MRPC § 1.5(d)(1). And the pleadings make clear that the representation was undertaken on an hourly basis, *i.e.*, not contingent upon the outcome, and no evidence has been offered to the contrary. (See DE 1 at 3, ¶¶ f & g.)

---

44-13, Dep. Trans. at 25-26, 30.)  Her pleadings in the case at bar are hardly a model of clarity on this issue, and her brief does not remove the ambiguity.

Finally, even if Plaintiff could otherwise claim that she is entitled to a refund of all attorney fees paid due to Weiner's poor performance, rather than just a merely poor outcome,[14] she would still have to do so by establishing a breach in the standard of care through expert testimony.  While a failure to comply with the Michigan Rules of Professional Conduct is a basis for invoking the disciplinary process, it does not itself "give rise to a cause of action for enforcement of a rule for damages caused by [the] failure to comply."  MRPC § 1.0(b).

### iv.  Subject Matter Jurisdiction is Questionable

The "general rule [is] that subsequent events cannot destroy jurisdiction once acquired" in federal court.  14AA Fed. Prac. & Proc. Juris. § 3702.4 (4th ed. 2018).  This applies to the amount in controversy requirement; the "existence or nonexistence of the amount in controversy required for subject matter jurisdiction purposes is determined on the basis of the facts and circumstances as of the time that an action is commenced in a federal court."  *Id.*  "[E]ven if part of the plaintiff's claim is dismissed, for example, on a motion for summary judgment, thereby reducing the plaintiff's remaining claim below the requisite amount in controversy, the district court retains jurisdiction to adjudicate the balance of the claim."  *Id.*  But

---

[14] "There is authority that attorney's fees and costs expended *as a result of an attorney's alleged malpractice* can constitute legally cognizable damages for purposes of stating a claim for legal malpractice."  7A C.J.S. § 366 (2018) (emphasis added).

an exception to the general rule that has been recognized by many federal courts is when the original pleading "stated an amount in a confusing or ambiguous manner[; then] the district court may interpret later events as attempts at clarification of the facts existing at the time of commencement." *Id.* Barring summary judgment on the merits, the Undersigned would recommend that the Court conduct additional inquiry or order discovery on this issue.

Plaintiff's claim of actual damages, interests and costs was stated in a confusing and ambiguous manner. For example, it makes little sense for Plaintiff to have agreed to pay Defendant an additional $2,000 in attorney fees, by way of compromise, if she truly believes that she was owed a $28,000 or $70,000 reimbursement of all fees previously paid to him for his professional services. If she indeed compromised the dispute over Weiner's attorney fees down to $2,000, as would appear from her own pleadings, and if the sanctions awarded by the Oakland County Circuit Court were likewise compromised down to approximately $7,000 in an agreement with her ex-husband, her damages would not appear to meet the $75,000 monetary threshold for diversity jurisdiction. Indeed, even if the $28,000 sought for reimbursement of "legal fees paid to Defendants" in her legal malpractice claim (DE 1 at 9, ¶ 26) were added to the $9,000 she assigns to the overbilling of fees and sanction award, her damages still fall below the $75,000 jurisdictional threshold required for this Court to exercise diversity jurisdiction, unless, perhaps,

her claim for exemplary damages were allowed to go forward.  *See* 28 U.S.C. § 1332(a).

Besides her request for exemplary damages, the Complaint only seeks legal relief in the form of actual damages, interest and costs. (DE 1 at 11.)  But even though the parties did not raise this issue in their brief, a claim for exemplary damages is not likely to survive judicial scrutiny. As the Sixth Circuit stated in reversing a prior grant of exemplary damages by this Court, in a case involving claims against a rogue securities broker, "It does not appear to us that a Michigan state court would allow recovery of exemplary damages based on the type of harm Campbell experienced.  As a court sitting in diversity jurisdiction, we decline to extend their recovery of exemplary damages to fraudulent and reckless acts arising in the context of this type of fiduciary relationship." *Campbell v. Shearson/American Express, Inc*., 829 F.2d 38, *3 (6th Cir. Sept. 9, 1987) (unpublished).  This is so because exemplary damages are not available under Michigan law in cases which involve purely commercial transactions.  *See Jackson Printing Co. v. Mitan*, 425 N.W.2d 791 (Mich. Ct. App. 1988); *Kirkland v E.F. Hutton & Co., Inc.*, 564 F. Supp. 427, 445–446 (E.D. Mich. 1983); *Veselenak v Smith*, 327 N.W.2d 261 (Mich. 1982); *Keewin v. Massachusetts Mut. Life Ins. Co*., 295 N.W.2d 50 (Mich. 1980).

### b.  Defendant's Withdrawal from the Underlying State Case

Plaintiff also argues that Defendant abandoned her case.  To put her point in perspective, "[a]n attorney's negligence or mistake is distinguishable, as regards the right to reopen a [case], from his abandonment of the case, which may be in effect a fraud on his client."  *Amco Builders & Developers, Inc. v. Team Ace Joint Venture*, 666 N.W.2d 623, 626 (Mich. 2003) (internal citations omitted).

However, Plaintiff is collaterally estopped from relitigating the issue of Defendant's withdrawal.  As the Michigan Court of Appeals has explained,

> If clients could challenge a withdrawal after an attorney or law firm established the grounds to withdraw identified in MRPC 1.16 [*e.g.*, "(4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;" "(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client;" or "(6) other good cause for withdrawal exists."] and acquired permission to withdraw in the form of a court order, then attorneys and law firms would have no incentive to go through this formal procedure.  Stated another way, *if collateral estoppel did not apply in this situation, withdrawing under court order would expose an attorney or law firm to exactly the same consequences as abandoning a client*.  This exposure, in turn, would discourage law firms and attorneys from taking the time and incurring the expense of obtaining permission from the court to withdraw, which is what MRPC 1.16, operating in conjunction with MCR 2.117(C), contemplates.  Alternatively, failing to apply collateral estoppel in this case may force some attorneys and law firms to remain counsel in cases in which the attorney-client relationship has degraded to the point where it is no longer beneficial to the client.  Moreover, applying collateral estoppel in this way would have little effect on a subsequent malpractice action.  After an attorney or law firm withdraws, the client could still challenge the attorney or firm's conduct in the time *preceding the withdrawal*, which would not have been necessarily litigated in the decision concerning a motion to

> withdraw. Thus, the value of applying the collateral estoppel doctrine
> in this case is not only significant, it has few negative effects.

*Keywell & Rosenfeld*, 657 N.W.2d 759, 789–790 (emphasis added) (holding that the

trial court erred in failing to instruct the jury to accept as fact that [the law firm] had

withdrawn properly in the underlying action).

Likewise, Defendant's withdrawal here was proper. Pursuant to MRPC

1.16(b)(4)–(6), he argued that Plaintiff was not fulfilling her payment obligations

and that the underlying case was becoming a financial burden. (DE 44-31.) Plaintiff

was afforded a full and fair opportunity to litigate the merits. (DE 44-32.) And

Defendant received formal permission to withdraw from the State Court. (DE 44-

33.) His withdrawal was proper and not an abandonment; so, Plaintiff is collaterally

estopped from relitigating this issue.

### c. Defendant's Discussion with Appellate Counsel

In Plaintiff's response, she alleges—for the first time—that Defendant

breached the duty of confidentiality. Defendant allegedly "discussed [her] case with

an appellant [sic] attorney he has a long-standing relationship with and highly

recommended her due to her past success in his cases requiring appeal." (DE 54 at

13.)

It is clear that Plaintiff is now advancing a claim with no factual basis or

development. *See, e.g.*, *U.S. v. Fizer*, 2010 WL 299502, *1 (E.D. Mich. Jan. 20,

2010). Undeveloped arguments are deemed waived. *Kennedy v. Comm'r of Soc.*

*Sec.*, 87 Fed. App'x. 464, 466 (6th Cir. 2003) ("issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996).

Besides, on the merits, Plaintiff has not actually alleged a true breach of confidentiality, even in response to this motion.  MRPC 1.6(a) provides that a lawyer shall not reveal confidential client information unless "the disclosure is impliedly authorized in order to carry out the representation."  Plaintiff has only alleged that Defendant sought appellate advice; based on the record, this conduct appears to be "impliedly authorized."

### 2.  Breach of Fiduciary Duty

An attorney's duties are two-fold: (1) competent representation, and (2) compliance with the fiduciary obligations of confidentiality and loyalty.  Mallen, 2 LEGAL MALPRACTICE § 15:3.   These fiduciary obligations set a standard of "conduct," analogous to the standard of "care."  *Id.*  This approach uses the four-element model for negligence, but substitutes the particular fiduciary obligations for the duty of care.  *Id.*

The phrase "fiduciary breach," however, is no more descriptive than the phrase "legal malpractice."  *Id.*  "A cause of action for fiduciary breach requires a breach of confidence, a breach of loyalty, or both."  *Id.*  "Although the attorney-

client relationship imposes fiduciary obligations, negligent conduct alone usually does not implicate a breach of those obligations.  The lawyer may have acted negligently, but with undivided loyalty and preserved the client's confidences." *Id.* The converse can be true as well.  *Id.*  When "the basis for a claim of fiduciary breach arises from the same facts and seeks the same relief as a negligence claim, such a claim becomes redundant and should be dismissed." *Id.*  A negligence claim, however, should not preclude "a factually distinct fiduciary breach claim." *Id.*

Breach of fiduciary duty is a commonly chosen veil for legal malpractice claims.  But a complaint alleging that an attorney's duties, which are not separate and independent of the attorney's duties under the attorney-client relationship, sounds in legal malpractice.  *See Aldred v. O'Hara-Bruce*, 458 N.W.2d 671, 672–673 (Mich. Ct. App. 1990) (holding that "claims against attorneys brought on the basis of inadequate representation" are for malpractice).

Thus, it is important to consider Plaintiff's specific factual allegations.  Here, Plaintiff's second cause of action for breach of fiduciary duty largely makes no new factual allegations.  (*See* DE 1, ¶¶ 26–29.)  Instead, Plaintiff makes conclusory statements: reciting that she was owed a fiduciary duty (DE 1, ¶ 26, ¶ 29); reiterating that she sustained damages (*Id.* at ¶ 27); and alleging that she is entitled to exemplary damages because Defendant acted with fraud and/or malice (*Id.* at ¶ 28). Additionally, she alleges that Defendant failed to advise her to seek new counsel,

charged unconscionable fees, and generally mismanaged the case.  (*Id.* at 10, ¶ 26.)

Defendant's alleged mismanagement of Plaintiff's case and failure to advise her to seek new counsel are both claims based on inadequate representation that are subsumed in her legal malpractice action.  *Aldred*, 458 N.W.2d at 672–673.  Additionally, they are vague and undeveloped.  *Kennedy*, 87 Fed. App'x. at 466.

The only allegation that might support a separate action for fiduciary breach is the allegation of unconscionable fees, although she discusses this in the context of her unspecified and undeveloped fraud allegations as well. MRPC 1.5(a) does forbid attorneys from charging "an illegal or clearly excessive fee],]" but again, a failure to comply with the Michigan Rules of Professional Conduct does not, in itself, "give rise to a cause of action for enforcement of a rule for damages caused by [the] failure to comply."  MRPC § 1.0(b).

However, that is beside the point.   Whether Plaintiff's allegation of unconscionable fees is subsumed by her legal malpractice claim, her passing fraud allegations, or is best considered separately, Plaintiff has provided no evidence beyond a bare allegation that Defendant charged unconscionable fees, despite Defendant's argument that she suffered no damages.  She does not provide evidence of an oral or written fee agreement; she did not verify her Complaint or Objection; she made only a conclusory allegation without factual support.  In her Complaint, she alleges that Weiner charged unconscionable fees. (DE 1 at 10.)  Likewise in her

Objection, she alleges that "excessive fees were charged the client which Weiner admitted to."  (DE 54 at 13; *see also Id.* at 2, 15, 32.)  Her undeveloped argument is waived.  *Kennedy*, 87 Fed. App'x. at 466.

Even if her argument were not waived, in order to prove that Weiner's fees were excessive or "unconscionable," she would likely need to proffer an expert opinion, and she does not have one. The Michigan Rules of Professional Conduct state that, "A fee is clearly excessive when, after a review of the facts, *a lawyer* of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee."   M.R.P.C.  1.5(a) (emphasis added).   Mayer is presumably not a lawyer and would need one to testify as to what a "lawyer of ordinary prudence" would deem to be an excessive fee, considering further criteria spelled out by the rule, much of which also requires legal expertise and experience, including the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

M.R.P.C. 1.5(a).  Mayer admits in her deposition that no lawyer has ever told her that Weiner's fees were unreasonable. (DE 44-13, Dep. Trans. at 184.)

I recognize that the Michigan Court of Appeals expressly considered "whether expert testimony is required to establish the reasonableness of attorney fees[,]" and concluded that "no Michigan statute, court rule, or case law exists requiring expert testimony for such a purpose."  *Zeeland Farm Servs., Inc. v. JBL Enterprises, Inc.*, 555 N.W.2d 733, 736 (Mich. Ct. App.1996).  However, the court went on to explain:

> The factors listed in MRPC 1.5(a) are properly considered when deciding if attorney fees are reasonable in a given case.  *In re Condemnation of Private Property for Hwy. Purposes,* 209 Mich. App. 336, 341–342, 530 N.W.2d 183 (1995).  We are convinced that, just as a jury does not require expert testimony to determine what a reasonable person would do *in a simple negligence case*, a jury does not require expert testimony to determine whether attorney fees are reasonable *in a simple breach of contract case*.  MRPC 1.5(a) requires no scientific, technical, or other specialized knowledge in understanding whether attorney fees are reasonable in *relatively simple legal matters*.  *In such a case*, if a lay witness' testimony comports with MRPC 1.5(a) and explains why the witness finds the fees reasonable, we conclude that evidence is sufficient to allow the jury to decide the matter. MRE 701, 702.

*Zeeland,* 555 N.W.2d at 737 (emphases added).

The underlying divorce case here, involving a specialized area of legal practice and litigated over a 10-year period in three phases, hardly appears to have been a

"relatively simple legal matter." Thus, Mayer may not be able to prevail on this issue, among other reasons, absent an expert opinion.

### 3. Scattered Allegations of Fraud and Falsification

Rule 8 and Rule 9 must be read together; the plaintiff "must state sufficient facts to transform the claim from one that is merely possible to one that is plausible." *Moore's*, § 9.03. Moreover, Rule 9(b) requires that the circumstances constituting fraud be pled with *particularity*. *Id.* For example, plaintiffs should allege the time, place, or content of the misrepresentation. *Id.* The higher pleading standards of Rule 9 "stem from concerns that general, unsupported allegations of fraud or mistake can seriously damage reputation . . . and fail to provide adequate notice. *Id.* Thus, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy Rule 9(b). *Id.* For example, in a claim by employees and their wives against an employer for damages from alleged exposure to dangerous chemicals, allegations that defendants "actively practiced fraud upon the plaintiffs" by failing to warn them about the dangers of contamination were deemed insufficient. *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (holding that the allegations were "purely conclusory").

Here, Plaintiff's intimations of "falsification" and fraud are dispersed throughout her Complaint and response, yet not pleaded in a separate count; but they are no more than that, *intimations*. In her Complaint, Plaintiff concludes that

Defendant's "fraudulent legal practice caused [her] to be damaged." (DE 1 at 5.) Without specifics, she alleges that "Defendant induced [her] to pay him large sums of money by making representations regarding the legal matter which were untrue." (*Id.*) Similarly, she alleges that Defendant took "large sums of money under the guise of 'non-refundable' retainers" and was "falsifying the originality of documents." (*Id.*) Moreover, Plaintiff vaguely claims that she discovered Defendant's "illegal accounting procedures," which included falsifying invoices and double charging for drafting of documents which had been previously filed, although, as discussed above, the record shows that some court filings and at least one subpoena were necessarily amended. (*Id.*; see, *e.g.*, DEs 44-21 & 44-22.)

But these allegations are lacking in detail, and she admits that Defendant already agreed to a reduction of his allegedly inflated fees. And, significantly, one cannot tell from the generalities of the pleadings when this agreement was made relative to Mayer's discovery of Weiner's alleged "illegal accounting practices." (*Id.*) Indeed, it appears that the parties have already come to a resolution, as pleaded on page 5 of the Complaint, where Plaintiff pleads in paragraph (p.): "Falsified invoices requiring the Plaintiff to spend weeks analyzing charges through document comparison of phone records and emails. The result, Defendant had excess charges over $7,000. Ultimately agreed to a $5,000 reduction in his invoice." (DE 1 at 5.) In her present response, Plaintiff similarly argues that

Defendant breached his fiduciary duty by charging "excessive fees."  (DE 54 at 13.)

Yet her use of terms of art related to fraud and breach of fiduciary duty seem to

overlap with her complaints about Defendant's accounting practices.

Plaintiff's allegation of fraud fails for various reasons.  As discussed earlier,

the essence of her claim is for legal malpractice.  And even if she could allege fraud

separately, she has not done so with the requisite particularity.  She has failed to

demonstrate the factual basis for the claim or to provide evidence in support of it.

Undeveloped arguments are deemed waived.  *See Fizer*, 2010 WL 299502, at *1;

*Kennedy*, 87 Fed. App'x. at 466.  Lastly, damages appear to be lacking, due to

compromise.

In sum, Plaintiff does not actually plead a separate cause of action for fraud:

instead, she generously sprinkles the words *falsified, fraud* and *fraudulent*

throughout her complaint, without enough detail to discern what Defendant's alleged

"fraudulent representations" and "fraudulent legal positions" actually were or how

they caused reasonable reliance or damages. (DE 1 at 5, ¶¶ k & l.)  *See Kassab v.*

*Michigan Basic Prop Ins. Ass'n*, 460 N.W.2d 300, 303 (Mich. Ct. App. 1990), *rev'd*

*in part on other grounds*, 491 N.W.2d 545 (Mich. 1992) (elements of Michigan

common law fraud); *State-William Partnership v. Gale*, 425 N.W.2d 756 (Mich. Ct.

App. 1988).  She alleges overbilling, yet also alleges that they ultimately

compromised the overcharges by agreeing to a $5,000 reduction in Defendant's

invoice. She alleges that Defendant's breaches in his fiduciary duties "were committed with oppression, fraud and/or malice[,]" but only to describe the nature of the breach and to justify her claim for exemplary damages, not as a separate cause of action. (*Id*. at 10, ¶ 28.) The Court is unable to construe this as a cognizable fraud claim, nor has any evidence been put forward to support one.

### F. Conclusion

Therefore, it is recommended that the Court **GRANT** Defendant Howard Weiner's May 4, 2018 motion for summary judgment. (DE 44.)

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 10, 2018          s/*Anthony P. Patti*
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on December 10, 2018, electronically and/or by U.S. Mail.

                                  s/Michael Williams
                                  Case Manager for the
                                  Honorable Anthony P. Patti