UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELE MAYER,

    Plaintiff,

v.

HOWARD N. WEINER,

    Defendant.

Case No. 17-12333
Honorable Laurie J. Michelson
Magistrate Judge Anthony P. Patti

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [66], ACCEPTING THE MAGISTRATE JUDGE'S RECOMMENDATION [64], AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [44]**

In 2006, Michele Mayer and Steven Gregerson divorced. Howard Weiner represented Mayer in the divorce proceedings. Years later, Mayer began to suspect that Gregerson was not paying her all that she was owed under the terms of the divorce judgment. She tried to get evidence to prove that suspicion herself, but after Gregerson's employer rejected her request for information, she asked Weiner for help. Weiner obliged. The two ended up pursuing a motion to enforce the terms of the divorce or, in the alternative, to modify those terms. In the end, the state court found that Mayer and Weiner lacked the factual support they needed to pursue enforcement or modification. So the judge sanctioned Mayer by making her pay what Gregerson expended to defend against her and Weiner's efforts. Mayer believes she would not have been sanctioned if Weiner's representation had been better. So she filed this lawsuit asserting, among other things, legal malpractice.

Weiner believes that it is Mayer's case against him that lacks factual support. So he seeks summary judgment. The Court referred Weiner's motion (along with other pretrial matters) to Magistrate Judge Anthony P. Patti. He recommends granting Weiner's motion. Mayer objects. For

the reasons that follow, the Court will overrule Mayer's objections, accept the Magistrate Judge's recommendation, and grant Weiner summary judgment.

**I.**

**A.**

Because Weiner seeks summary judgment, the Court viewed the record in the light most favorable to Mayer in drafting the following summary.

In 2006, Mayer divorced Gregerson. Weiner represented Mayer in the divorce proceedings in Michigan's Sixth Circuit Court (Oakland County Circuit Court).

Ultimately, Judge Joan Young entered a consent judgment. The judgment stated (in part) that Mayer was to get (A) "one-third of [Gregerson's] base salary, which is currently $158,000" and (B) "[o]ne-third of the negotiated value of the employer provided living expenses, currently valued at $32,000 per year." (ECF No. 44, PageID.1734.) The parties refer to these as the A and B clauses of the divorce judgment.

After the judgment, Mayer (via Weiner) asked Judge Young to order Gregerson to show cause. The motion claimed that Gregerson's salary and other benefits had increased and that Mayer was not receiving her one-third share. (ECF No. 44, PageID.1470.) Judge Young declined to order Gregerson to show cause. (ECF No. 44, PageID.1489.) As the basis for Judge Young's decision was not clear, Mayer and Weiner sought "clarification and reconsideration." (ECF No. 44, PageID.1501.) Judge Young clarified that she had held that "Components A and B . . . are static and do not fluctuate in amount to be paid" to Mayer. (ECF No. 44, PageID.1557.) The case then fell dormant for five years.

Things started to pick up again in late 2013 when Mayer reached out to Gregerson's employer inquiring into Gregerson's annual bonus, certain stock options, and deferred

2

compensation. (ECF No. 44, PageID.1629.) After Gregerson's employer refused to provide Mayer with the confidential information, Mayer sent Weiner a letter. (ECF No. 44, PageID.1637.) Mayer said, "I find myself in need of your assistance in order to obtain information from" Gregerson's employer. (*Id.*)

Weiner agreed to help. In January 2014, he served a subpoena directing Gregerson's employer to produce a sweeping amount of compensation information, mailed a copy of the subpoena to Gregerson (as opposed to the attorney who represented Gregerson back in 2008), and soon thereafter, filed a motion to enforce the terms of the divorce judgment. (ECF No. 44, PageID.1650, 1665.) The motion stated that Mayer "had reason to believe" that Gregerson had violated the judgment by "deferring a portion of his compensation." (ECF No. 44, PageID.1652.) It also asserted that Gregerson had not, as required under the judgment, provided Mayer with annual notice of his life insurance. (*Id.*) Mayer and Weiner's motion further stated that Mayer "ha[d] reason to believe" that Gregerson had replaced or exchanged the stock options and grants listed in the divorce judgment. (ECF No. 44, PageID.1653.) The motion was signed by Mayer along with a statement that "the foregoing" was "true" to the "best of [her] knowledge and belief." (ECF No. 44, PageID.1654.)

Gregerson, through counsel, moved to quash the subpoena. His motion was titled "Third Post-Judgment Motion to Quash" which, while technically true, might have made Mayer and Weiner's conduct look a bit worse than it was—the prior two motions had been filed during the first post-judgment skirmish that ended in 2008. In any event, Judge Young quashed the subpoena without prejudice. (ECF No. 44, PageID.1689.)

As for Mayer's motion to enforce the terms of the divorce judgment, Weiner filed an amended motion in early February 2014. The amendment was apparently prompted by three letters

3

from Gregerson's attorney explaining why the January version lacked merit. (*See* ECF No. 44, PageID.2001; ECF No. 66, PageID.3164.) The letters asked Weiner to withdraw the motion and subpoena "immediately." (ECF No. 66, PageID.3164.) Mayer says Weiner never told her about the letters. (ECF No. 1, PageID.3, 6.) The amended motion was different from the prior iteration in two main ways. For one, Weiner added the same argument from 2008 about the A and B clauses. And rather than purely seeking enforcement of the consent judgment, the amended motion alternatively sought modification of the judgment's terms in view of "changed circumstances." (*See* ECF No. 44, PageID.1672.) Unlike the prior version, it appears that Mayer did not sign the amended motion or attest to its veracity. (*See* ECF No. 44, PageID.1678.) About two weeks later, on February 18, 2014, Mayer and Weiner again amended their motion to enforce the judgment or modify it. (ECF No. 44, PageID.1691–1707.) As to this second-amended motion, Mayer signed that it was "true to the best of [her] knowledge and belief." (ECF No. 44, PageID.1707.)

None of this went over very well with Gregerson and his attorney. In fact, the day after Mayer and Weiner filed their second-amended motion, Gregerson and his attorney filed for sanctions. (ECF No. 44, PageID.1691–1707.) The sanctions motion asserted, among other things, that the subpoena on Gregerson's employer was improper because the case had been closed and no motion had been pending, that the court had already rejected the argument about the A and B clauses; the sanctions motion also included a letter from Gregerson's employer stating that there had been no deferral of compensation or stock replacement and explained that although Gregerson may not have provided annual proof of life insurance, the terms of the divorce judgment allowed Mayer to get the proof herself. (*See* No. 44, PageID.1718–1728.) Judge Young set Mayer's and Gregerson's motions for a February 26, 2014 hearing.

In advance of that hearing, Weiner wrote to Mayer. He stated, "As we discussed before, [Gregerson's] attorney thinks your Motion is frivolous and is asking for fees and sanctions. Attached is the Motion filed by his attorney for your review. While I do not agree with her, there is no telling what Judge Young will do. Do you still want me to proceed on Wednesday, February 26th?" (ECF No. 44, PageID.1901.) Mayer responded, "I am very impressed with your revised motion and believe you have developed a wonderful argument. Well done . . . Yes, I would like to move forward and thank you!" (*Id.*)

And so move forward they did. At the hearing, Weiner argued in part, "We believe we're entitled to do discovery and we would like an evidentiary hearing. If at the conclusion of the evidentiary hearing, you were to decide that we hadn't gone forward with our proofs or sufficient threshold, then you certainly could, within your powers, make a determination of costs and fees, and that's a risk that Mrs. Gregerson would have to assume, if she cho[o]ses . . . to go ahead with the hearing." (ECF No. 44, PageID.1939.) Meanwhile, Gregerson's attorney played up the burden of responding to Mayer's motion: "why I filed a separate motion for sanctions, I should not have had to respond to not one, not two, but three motions where we continue to argue issues that this Court has already decided. . . . [I]t's just so much money. I've already spent—and my client is going to get a $10,000.00 bill based on these briefs, all this research, going back through my file, and every time I get another brief, another response, another argument, it's—there is another allegation that I have to go back eight years. I have ten red-ropes in this case." (ECF No. 44, PageID.1946.)

The day after the hearing, Mayer wrote Weiner. She stated, "I FORGOT TO MENTION: I would like to request that [Gregerson] pay[] for all of my legal fees related to this series of Motions." (ECF No. 44, PageID.1979.) Weiner responded by explaining that at the hearing, Judge

5

Young stated that she was standing by her determination from 2008 about the A and B clauses and permitting only limited discovery into Gregerson's compensation. (*Id.*) Weiner continued, "The Judge is also allowing [Gregerson's] attorney to proceed on their request for attorney fees and sanctions against you. There is no chance that she is going to order [Gregerson] to pay your attorney fees but you stand a real risk of being hit for his fees." (ECF No. 44, PageID.1979.)

Following discovery and some additional hearings, the state court entered an opinion on Mayer's and Gregerson's motions. In an October 2014 order, Judge Young found that Mayer had not shown that Gregerson had replaced the stock awarded to Mayer under the divorce judgment or that he had deferred his compensation. (ECF No. 44, PageID.1997–2000.) Judge Young further stated, "Based on the overwhelming evidence to support [Gregerson's] position that the subpoenas and motions filed by [Mayer] were not well-grounded in fact and had been previously ruled on by the court in 2008, and that [Gregerson's] counsel provided numerous letters and attachments responding to the motion informally in an attempt to have [Mayer] withdraw her motion, the court finds that [Mayer's] conduct is subject to sanctions pursuant to MCR 2.114(D) and (E)." (ECF No. 44, PageID.2002.) At the time of Judge Young's ruling, Michigan Court Rule 2.114(D) stated that the signature by an attorney or party was a representation that he or she had read the document and that, to the best of his or her belief, formed after reasonable inquiry, the document was well grounded in fact. Although finding that Gregerson was entitled to sanctions, Judge Young did not specify against whom the sanctions would run (Mayer or Weiner or both). (*See* ECF No. 44, PageID.2002–2003.) And while Gregerson asserted that his attorney fees and costs for defending the motions was $34,067, Judge Young scheduled a hearing for Gregerson's counsel to prove up her expenses.

But before that scheduled hearing, Weiner sought to withdraw as Mayer's counsel (or, in Mayer's view, sought to abandon her). Weiner's basis for withdrawing is not entirely clear from the record. It appears to have been in part due to his belief that Mayer was not "return[ing] phone calls or pay[ing] for [his] services." (ECF No. 44, PageID.2008.) But it also appears that Weiner was plain tired of the case: "This has been a labor-intensive case, as this Court is well aware of, and to be honest with the Court, I'm just burnt out on the Gregerson case. I'm just not as young maybe as I used to be. The ongoing arguments over strategy, settlement discussions, whatever, with Mr[s]. Gregerson have indicated that we don't have the same philosophy towards the case, and the case probably just needs [some] fresh blood, just not my blood." (ECF No. 54, PageID.2673.) Judge Young permitted Weiner to withdraw. (ECF No. 54, PageID.2682.)

The evidentiary hearing on the amount of sanctions was not held until a year later, in October 2015. Although Mayer had retained an attorney to pursue an appeal, she represented herself before Judge Young. (*See* ECF No. 44, PageID.2059; ECF No. 54, PageID.2677.) In the end, Judge Young ordered Mayer to pay about $42,800 in attorney's fees and costs. (ECF No. 44, PageID.2068.)

It is unclear whether Mayer ever paid that amount to Gregerson. In October 2016, the two settled their dispute. Under that settlement, Gregerson would pay Mayer $192,000 to be done with alimony payments forever. (*See* ECF No. 44, PageID.2171–2172.) As for the sanction, about $35,800 of the $42,800 had been put into escrow and the parties agreed that Mayer would get that amount back. So it appears that Mayer may have only ever paid about $7,000 of the sanction.

**B.**

About nine months later, Mayer sued Weiner for malpractice and breach of fiduciary duty. In time, Weiner moved for summary judgment. (ECF No. 44.)

7

This Court referred all pretrial matters in this case, including Weiner's motion, to Magistrate Judge Anthony P. Patti. Via a 47-page report, he recommends that this Court grant Weiner's motion. (*See* ECF No. 64.)

Mayer has filed 31 objections to the Magistrate Judge's Report.

## II.

As the Magistrate Judge has given a recommendation on a dispositive motion, the Court has taken an independent look at each issue raised by Mayer's objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

That means this Court asks whether, even viewing the summary-judgment evidence in the light most favorable to Mayer, all reasonable juries would nonetheless find for Weiner. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

### A.

The Court begins with what appears to be Mayer's primary issue with Weiner's representation: that he served a subpoena in a closed case with nothing pending and that he filed and continued to pursue the motion to enforce (or modify) despite a substantial likelihood of sanctions.

Start with the law. "The elements of legal malpractice are: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Manzo v. Petrella*, 712, 683 N.W.2d 699 (Mich. Ct. App. 2004). To avoid a claim of malpractice, an attorney

should "act as an attorney of ordinary learning, judgment, or skill would under the same or similar circumstances." *Simko v. Blake*, 532 N.W.2d 842, 844 (Mich. 1995). But, when an attorney makes a judgment call or tactical decision, the law gives him some leeway. *See id.* at 847. In particular, "the attorney judgment rule recognizes that an attorney who makes 'mere errors in judgment,' may avoid malpractice liability, if the attorney acted in good faith, and demonstrated reasonable skill, care, discretion and judgment equivalent to that of the average practitioner, in performing the legal representation." *Fifth Third Bank v. Couzens Lansky Fealk Ellis Roeder & Lazar, P.C.*, No. 323654, 2016 WL 146308, at *7 (Mich. Ct. App. Jan. 12, 2016).

Viewing the evidence in the light most favorable to Mayer, a reasonable jury could find that Weiner should have done better. Before seeking a subpoena, Weiner could have made sure that the motion to enforce had been docketed. And perhaps instead of sending a copy of the subpoena directly to Gregerson, he could have first checked if Gregerson was still being represented by counsel. And maybe Weiner could have asked Mayer to better substantiate her belief that Gregerson was squirreling away money before he filed either the subpoena or motion. And maybe Weiner should have heeded the warnings from Gregerson's attorney and withdrawn the motion to enforce. And it was probably a bad choice for Weiner to make the argument about the A and B clauses to a judge who had already rejected that argument.

That said, no reasonable jury could find that Weiner's subpoena request and pursuit of the motion was anything more than an error in judgment that an average attorney would make. In a likely common occurrence, a spouse in a divorce action has concerns the other spouse is manipulating assets. She asks her lawyer to do something about it. He does. Although the subpoena was filed before the motion, it was only days before. And while Judge Young quashed the subpoena, she eventually let Mayer conduct some discovery on Gregerson's employer. As for the

9

motion to enforce or modify, it did not merely reargue the A and B clauses. It also argued that Weiner may have been deferring compensation, that he swapped out stock listed in the divorce judgment, that he had not complied with the divorce judgment's notice provisions about life insurance, and that circumstances had changed since the judgment's entry. The assertion about the notice provisions turned out to be correct. And while the claim of changed circumstances was probably not the strongest, it was not frivolous to argue that Mayer's health had declined, that she never was able to earn the $20,000 in income imputed to her under the divorce judgment, and that Gregerson's compensation had increased.

Moreover, in deciding whether to pursue or drop the motion, it was reasonable, if not necessary, for Weiner to work his client's desires into his calculus. *Cf.* Mich. R. Prof. Resp. 1.2 ("In representing a client, a lawyer may, where permissible, exercise professional judgment to waive or fail to assert a right or position of the client."). And here, Mayer apparently thought the benefits of greater alimony outweighed the risk of sanctions. Indeed, after Gregerson moved for sanctions, Weiner asked Mayer how she wanted him to proceed at the February 26 hearing. Mayer, who has a college degree and who was given a copy of Gregerson's motion (ECF No. 44, PageID.1901, 2080), indicated that she wanted Weiner to forge ahead. And after the hearing—when discovery on Gregerson's employer had not yet been conducted and Judge Young had not yet ruled on Gregerson's motion for sanctions—Weiner explained, "The Judge is also allowing [Gregerson's] attorney to proceed on their request for attorney fees and sanctions against you. There is no chance that she is going to order [Gregerson] to pay your attorney fees *but you stand a real risk of being hit for his fees*." (ECF No. 44, PageID.1979 (emphasis added).) Mayer has not pointed to any evidence indicating that after that warning from Weiner, she asked Weiner to change course.

In short, Weiner could have proceeded with more diligence and more caution. But the record does not permit a reasonable jury to find that by filing the subpoena and pursuing a motion to enforce the judgment or, in the alternative, to modify it, Weiner made an error in judgment that all average attorneys would have avoided. There was some chance that discovery might show that Gregerson was not in full compliance with the divorce terms and, failing that, there was some chance that Judge Young would find that changed circumstances warranted changing the terms. And Weiner's client wanted to pursue those possibilities. On the other side of the scale, was the possibility of paying Gregerson's attorney's fees and costs, an amount Weiner knew was in the $40,000 range. Perhaps the scales tipped toward dropping the motion. But if they did, it was not by much. So at most Weiner made a "mere error[] in judgment" that an average attorney would make. *See Simko*, 532 N.W.2d at 847. And that means that it would be unreasonable for a jury to find him liable for malpractice.

**B.**

In addition to malpractice claims, Mayer asserts that Weiner engaged in fraud and breached the fiduciary duty he owed her. And in Objection 1, Mayer says that the Magistrate Judge wrongly characterized her complaint as only claiming malpractice. (ECF No. 66, PageID.3150–51.) Having independently reviewed Mayer's complaint, the Magistrate Judge's characterization of it was quite fair. Even so, the Court will expressly address Mayer's claims of fraud and breach of fiduciary duty.

Fraud and breach of fiduciary duty claims have different elements than a claim of malpractice. One way the two torts differ is that they involve a level of intent that malpractice does not. In particular, to prove fraud, Mayer must show that Weiner made a material representation, that the representation was false, that Weiner knew it was false (or, at least, acted recklessly with

11

regard to its truth), that Weiner intended her to act upon the representation, and that she in fact relied on it to her detriment. *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 568 (Mich. 2012). As for breach of fiduciary duty, "relief . . . may be sought when a position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *Potter v. Secrest, Wardle, Lynch, Hampton, Truex & Morley, P.C.*, No. 265002, 2007 WL 1345870, at *3 (Mich. Ct. App. May 8, 2007) (internal quotation marks omitted). "[T]he conduct required to constitute a breach of fiduciary duty requires a more culpable state of mind than the negligence required for malpractice." *Id.*; *see also Fuqua v. Goldstein*, No. 336418, 2018 WL 3397800, at *6 (Mich. Ct. App. July 12, 2018).

In addition to asserting that Weiner wrongly pursued the subpoena and motion to enforce, Mayer asserts that the version of the motion to enforce that Weiner filed differed from the one she approved and signed, that Weiner failed to tell her that the argument about the A and B clauses had previously been rejected, that he failed to explain the "legal implications" of Gregerson's counsel's letters, that he abandoned her by withdrawing, and that he engaged in unconscionable billing practices. (*See* ECF No. 1, PageID.3–10; ECF No. 66, PageID.3151.) Mayer also implies that Weiner beached confidentiality or privilege by discussing her case with another attorney. (ECF No. 54, PageID.2607.) And Mayer claims that Weiner contacted Gregerson directly despite knowing that he had counsel. (ECF No. 66, PageID.3172.)

Starting with Weiner's pursuit of the subpoena and motion, the evidence at worst suggests negligence. But, as explained, that mental state does not suffice for a claim of fraud or breach of fiduciary duty. Mayer argues that the motion was fraudulent because Judge Young had already rejected the A and B clause argument in 2008; but rearguing that issue was in no way a misrepresentation to Mayer. And even if Mayer's point is that Weiner failed to tell her that that

12

the A and B clause argument had been rejected, and so his circulation of the motion pre-filing was a material omission, Mayer has not shown that Weiner intended to mislead Mayer as opposed to having made the same argument either negligently or with the hope that changed circumstances would result in a changed opinion.

As for Weiner's alleged failure to fully educate Mayer about the import of Gregerson's counsel's letters, the record belies that allegation. Although he may have not done so upon receipt of the letters, Weiner informed Mayer of the consequences of moving forward at a point where sanctions were, in all likelihood, still avoidable (i.e., immediately before and after the February 26 hearing).

It is true that Weiner discussed the case with another attorney—but that was because Mayer indicated she might want to appeal and so Weiner contacted an appellate attorney he had used in the past to see if she would take the appeal. (ECF No. 44, PageID.1983.) And Mayer ended up hiring the appellate attorney. (ECF No. 44, PageID.1984, 2005, 2070.) Under these circumstances, Weiner did not breach fiduciary duties owed to Mayer in a way that renders him liable.

As for sending a copy of the subpoena directly to Gregerson, Mayer's response brief indicates that Weiner had a reasonable basis to believe that he was no longer represented. (*See* ECF No. 66, PageID.3172 (Weiner's reference to Court Rule 21).) So, again, he was at worst negligent.

That leaves Mayer's complaints about Weiner's billing practices, his modification of the motion after her approval, and his withdrawal.

As far as this Court can tell, when Mayer claimed to Weiner that he had overcharged her by $7,000, Weiner agreed to slash his bill by $5,000 "to put the matter to rest." (ECF No. 54, PageID.2636; ECF No. 1, PageID.5.) As the Magistrate Judge said, that sounds an awful lot like

an accord and satisfaction. (ECF No. 64, PageID.3126.) But even if not, the Court has no way to tell on this record whether Mayer was in fact overcharged by another $2,000 (or at all for that matter). Mayer does say that Weiner charged for briefs he had used before, emails he never sent, and phone calls he never made. (ECF No. 54, PageID.2635, 2637.) But Mayer never specifies which emails or calls, let alone offer proof that they were never made. She does say that when Weiner asked for a $2,500 payment for "pleadings we are filing and appearance in Court," that the referenced pleading was one he had previously drafted and used. (ECF No. 54, PageID.2647.) But it is not clear that Mayer ever paid that $2,500, if she did, how much of it went to the brief as opposed to the court appearance, or how much the brief in fact cost to prepare (presumably not *every* word was identical). Finally, Mayer complains that Weiner sent only one invoice for the entirety of the 2014 to 2015 representation. (ECF No. 1, PageID.3.) While that may be poor billing practice, Mayer does not explain how that caused her to overpay. Indeed, Mayer was ultimately able to analyze Weiner's bills and assert that he had overcharged by $7,000. Accordingly, the Court finds that Mayer's claims of overbilling should not proceed to the jury.

Turning to Mayer's claim that Weiner modified the motion to enforce, Mayer says that she approved the motion on January 20, 2014. (ECF No. 66, PageID.3149–50, 3158, 3174.) Mayer accuses Weiner of forging her signature and altering the date of the document. (ECF No. 66, PageID.3151.) Even if all of that is true, it does not establish compensable claims of fraud or breach of fiduciary duty. Mayer never says what changes were made to the motion after she approved it and whether those changes were material. And Mayer has no proof that that the changes are what led to sanctions. To the contrary, the motion was amended about two weeks later and then, again, about two weeks after that.

That leaves Weiner's withdrawal. Prior to withdrawing, Weiner filed a motion and the court held a hearing. Judge Young allowed the withdrawal. The Magistrate Judge found that Mayer had already made her case against withdrawal to Judge Young and so Mayer is precluded from doing so again. (ECF No. 64, PageID.3135.) And while Mayer's objections state why Weiner should not have been permitted to withdraw, her objections do not state why she should be able to make that argument to this Court, i.e., they do not say why the Magistrate Judge erred in applying issue preclusion. So the Court overrules Mayer's objections about Weiner's withdrawal, Objections 15 and 30.

## C.

What has been said so far addresses many of Mayer's 31 objections; the remainder can be addressed without extended discussion.

Objection 6 is about the evidence Weiner attached to his motion for summary judgment. Apparently, Mayer believes that Weiner included documents beyond the description of the exhibit (e.g., an exhibit titled "Mayer's Handwritten Motion for Reconsideration" was 53 pages despite the motion being only one page). (ECF No. 66, PageID.3156.) She also asserts that many of Weiner's summary-judgment exhibits reproduce the same documents. (*Id.*) The Court sees no basis for striking Weiner's exhibits. Perhaps some are cumulative or mislabeled and that took a bit for Mayer to sort out. But cumulative or mislabeled exhibits are not uncommon and, in this case, do not need to be stricken.

Mayer also has objections about the proof the law requires to establish malpractice. (ECF No. 66, PageID.3154, 3156–3157.) Often malpractice cases require the plaintiff to produce expert testimony because what counts as competent representation in a specialized area of law (e.g., a divorce case) is not in the knowledge bank of the judge presiding over the malpractice case. *See*

15

*Estate of Knudsen by Long v. Fieger*, No. 341412, 2019 WL 1049681, at *11 (Mich. Ct. App. Mar. 5, 2019). But nothing in this Court's ruling on Weiner's representation rests on a determination that Mayer needs (or does not need) an expert. So Objections 4, 20, and 26 are overruled to the extent that they are grounds for rejecting the Magistrate Judge's recommendation.

Mayer also has several objections that, in essence, assert that the Magistrate Judge or Weiner did not properly summarize or characterize something in the summary-judgment record. (*See e.g.*, ECF No. 66, PageID.3157, 3158.) The Court reviewed the challenged characterizations and either took Mayer's clarifications into account in the analysis above or found that the clarifications were not relevant to the Court's analysis. So Objections 7, 8, 10, 11, 12, 13, 15, and 19 are overruled to the extent that they are grounds for rejecting the Magistrate Judge's recommendation.

Mayer also makes a host of objections about the amount that she was allegedly damaged by Weiner's conduct. But nothing in this Court's determination about Weiner's representation turns on the amount of his liability. Nothing except maybe subject-matter jurisdiction. And while the Court agrees with the Magistrate Judge that it is not clear from Mayer's complaint how much she was allegedly damaged, and that the summary-judgment record suggests it was less than $75,000, Mayer's burden to plead the proper amount in controversy was not great. *Kovacs v. Chesley*, 406 F.3d 393, 395 (6th Cir. 2005) ("'It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938))). So Objections 2, 5, 14, 21, 22, 23, 24, 25, 27, 28, and 29 are overruled to the extent that they are grounds for rejecting the Magistrate Judge's recommendation.

## IV.

For the reasons given, the Court OVERRULES Mayer's objections to Magistrate Judge Patti's report and recommendation and hereby ACCEPTS his recommendation. For the reasons stated in this opinion and those in the Magistrate Judge Report, Weiner's motion for summary judgment is GRANTED.

SO ORDERED.

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE

Date: March 12, 2019

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 12, 2019.

s/William Barkholz  
Case Manager to  
Honorable Laurie J. Michelson